# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFNAN PARKER,<br><br>                Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>                Defendants. | No. 14-cv-2127 (GK) |

## **DEFENDANTS' MOTION TO DISMISS**

The Defendants District of Columbia ("District") and Charles Jones, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully request that the Court dismiss this matter with prejudice. As explained more fully in the accompanying memorandum of points and authorities, Plaintiff is collaterally estopped from relitigating any issue regarding the alleged sexual assault by Mr. Jones as the same issue was litigated before a Judge of the Superior Court of the District of Columbia during a hearing for a temporary restraining order. During that hearing, the Honorable Stephen Eilperin found Plaintiff to be not credible in his allegations against Mr. Jones, and therefore decided that matter by denying Plaintiff's motion for a temporary restraining order and granting Mr. Jones's cross-motion for a temporary restraining order. Thus, Plaintiff may not re-litigate before this Court the same issue that was already decided against him by the Superior Court.

Because this motion is dispositive in nature, Local Rule 7(m) is inapplicable.

                                              Respectfully submitted,

                                              KARL A. RACINE
                                              Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation

/s/  *Jonathan H. Pittman*
JONATHAN H. PITTMAN (DC. Bar No. 430388)
Chief, Civil Litigation Division Section III

/s/ *Shana L. Frost*
SHANA L. FROST (DC. Bar No 458021)
Assistant Attorney General
441 Fourth Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 724-6534
shana.frost@dc.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of March, 2015, a true and correct copy of the foregoing was mailed via first-class mail, postage prepaid, to the *pro se* Plaintiff at the following address:

Afnan Parker
1226 Oates Street, NE
Washington, DC 20002

　　　　　　　　　　　　　　　　　　　　　/s/ *Shana L. Frost*
　　　　　　　　　　　　　　　　　　　　SHANA L. FROST
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFNAN PARKER,<br><br>     Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>     Defendants. | No. 14-cv-2127 (GK) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

  The Defendants District of Columbia ("District") and Charles Jones, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully request that the Court dismiss this matter with prejudice. As explained more fully herein, Plaintiff is collaterally estopped from proceeding with his claims of an alleged sexual assault by Mr. Jones. Plaintiff brought the identical issue before the Honorable Stephen Eilperin of the Superior Court for the District of Columbia in Plaintiff's request for a temporary restraining order ("TRO") against Mr. Jones. During a hearing on Plaintiff's motion, as well as Mr. Jones's cross- motion for a TRO, Judge Eilperin found Plaintiff to be not credible in his allegations against Mr. Jones. The Court issued a decision on the issue, denying Plaintiff's motion for a TRO, and granting Mr. Jones's cross-motion. The TRO against Plaintiff was entered as a consent order, and Plaintiff's case against Mr. Jones was dismissed. Thus, Plaintiff may not re-litigate before this Court the same issue that was previously decided against him by the Superior Court.

I.      **Procedural and Factual Background**

Plaintiff contends that in Spring, 2014, he enrolled in Project Empowerment, which is administered by Mr. Jones through the District's Department of Employment Services ("DOES").[1]  Compl. ¶¶ 2-3; 7.  Plaintiff attended four weeks of classes, and then was placed at Southeast Ministry for two months, followed by Orr Elementary for two weeks, and then Hillcrest Apartments to do maintenance work.  *Id.* ¶ 8.  When Hillcrest Apartments did not offer Plaintiff a permanent position, Plaintiff returned to Project Empowerment in August 2014 for further development classes and to seek another job.  *Id.*

At the end of August to the beginning of September 2014, Plaintiff complained—to Mr. Jones, supervisor Regina Robinson, and case manager Kenya Harris—that he was not getting proper help with job placement.  Compl. ¶ 9.  When Plaintiff did not receive a response that he found satisfactory, Plaintiff submitted a written complaint to DOES Acting Director F. Thomas Luparello and copied Mr. Jones.  *Id.* ¶ 10.  Plaintiff contends that as a result of this complaint, Bobbi Strang (incorrectly identified in Plaintiff's complaint as Bobbie Strain) was sent to meet with Plaintiff, and Plaintiff reiterated to Ms. Strang that he was not receiving sufficient help with job placement.  *Id.* ¶¶ 11-12.

Plaintiff alleges that on September 22, 2014, Mr. Jones called Plaintiff into his office and advised Plaintiff that "what's said in here is kept in here."  Compl. ¶¶ 13-14.  Plaintiff claims that

---

[1]     "Project Empowerment is a transitional employment program that provides job readiness training, work experience, and job search assistance to District residents who face multiple barriers to employment.  Participants attend an intensive, three-week training course and upon completion have the opportunity to be placed in subsidized employment for up to six months.  In addition to job readiness training and job search assistance, Project Empowerment provides supportive services such as adult basic education, job coaching and occupational skills training.  The goal of Project Empowerment is for participants to secure permanent, unsubsidized employment." *See* http://does.dc.gov/service/project-empowerment-program (last visited Mar. 16, 2015).

2

Mr. Jones asked him why he sent a complaint "upstairs" and when Plaintiff claimed to not know what Mr. Jones was talking about, Plaintiff alleges that Mr. Jones responded, "You know what I'm talking about. You went to those people upstairs. You're going to find yourself thrown out of the program and you're not going to get paid." *Id.* ¶ 14. Plaintiff claims that he responded, "Yes I am going to get paid. I come here and sign in and do what I'm supposed to." *Id.* ¶ 15. Plaintiff alleges that Mr. Jones then informed Plaintiff that he could get Plaintiff a job at DPW or DDOT if Plaintiff did what Mr. Jones asked him to do." *Id.* ¶ 16. When Plaintiff asked what Mr. Jones wanted him to do, Plaintiff alleges that Mr. Jones replied, "I want to go down on you and give you a blow job. I want to screw you and I want you to screw me" and that he wanted the two of them to go to a gay bar known as "the Mill." *Id.* ¶¶ 17-19. Plaintiff contends that he told Mr. Jones, "I'm not into that. I don't go like that and I'm not going to do that for a job" and then left Mr. Jones's office. *Id.* at ¶¶ 20-21.[2]

The following day, September 23, 2014, Plaintiff alleges that while he was urinating in the men's bathroom Mr. Jones entered the bathroom, came up to Plaintiff from behind, and squeezed Plaintiff's scrotum for about four seconds, causing Plaintiff pain. Compl. ¶¶ 22-26. Plaintiff claims that when Mr. Jones let go, he pushed Mr. Jones off of him and said "what are you doing?" *Id.* ¶¶ 27-28. Plaintiff contends that Mr. Jones replied, "when are you going to give me some?" *Id.* ¶ 29. Plaintiff alleges that he rushed out the door with Mr. Jones following him, and that while in the hallway Mr. Jones grabbed Plaintiff's penis through Plaintiff's pants and

---

[2] It is the strong position of the Defendants that Plaintiff's allegations of sexual assault are completely and utterly false. However, because the instant motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), Defendants and the Court are required to assume that Plaintiff's factual assertions are true. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (On a motion to dismiss brought pursuant to Rule 12(b)(6) the Court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citations omitted).

3

again asked when Plaintiff was "going to give [him] some." *Id.* ¶¶ 30-32. Plaintiff asked Mr. Jones to leave him alone, and claims that Mr. Jones yanked Plaintiff's penis, causing pain, and stepped on Plaintiff's foot. *Id.* ¶¶ 33-34. Plaintiff contends that he reported the incident to building security that evening, and to MPD the next day. *Id.* ¶¶ 37; 39. He further states that he gave a statement to a detective with the sex crimes unit. *Id.* ¶ 41. Plaintiff also submitted a complaint to the Office of the Inspector General. *Id.* ¶ 43.

Plaintiff alleges that he experienced pain and bleeding and was diagnosed with hematuria at the George Washington University. Compl. ¶¶ 44-46. He further contends that he is seeking treatment from an orthopedic specialist for pain in his foot, as well as mental health therapy as a result of this incident. *Id.* ¶¶ 47-48.

On October 8, 2014, Plaintiff filed a *pro se* complaint in the Superior Court, in which he alleged "on Sep 23, 2014 I was approached by the Defendant in a sexual way that I did not ask for, nor hinted to. The Defendant grabbed my private areas and I had to push him away. Also on Sept 30, 2014, the defendant followed me into safeway and would not stop following me or leaving me alone, so MPD was called to stop him." *Afnan Parker v. Charles Jones*, C.A. No. 14-6376, Compl., (D.C. Super. Ct. Oct. 8, 2014) (Ex. C). In those proceedings, Plaintiff also sought a TRO. In response, on October 24, 2014, Mr. Jones filed a civil suit against Plaintiff, vigorously denying the allegations and requesting that Plaintiff stop defaming him. *Charles Jones v. Afnan Parker*, C.A. No. 14-6727, Compl. (D.C. Super. Ct. Oct. 24, 2014). Mr. Jones also sought a TRO. On October 29, 2014, the Honorable Stephen Eilperin conducted a hearing on the cross-motions of the parties. After listening to the testimony of both parties, Judge Eilperin found that Plaintiff's allegations that Mr. Jones sexually assaulted the Plaintiff were not credible, and that Mr. Jones's testimony that he did not sexually assault the Plaintiff was

4

credible. Judge Eilperin denied Plaintiff's TRO motion and dismissed Plaintiff's case, and granted Mr. Jones's TRO motion, ordering Plaintiff to stay at least 100 feet away from Mr. Jones's person, home and workplace, and not contact Mr. Jones by telephone, in writing, or in any other manner for one year.

Notwithstanding the TRO proceedings, on December 16, 2014, Plaintiff filed the instant matter, which raises the identical sexual assault allegations that arose during the TRO proceedings, and asserts common law claims of intentional infliction of emotional distress and battery, violation of the D.C. Human Rights Act, and claims against Mr. Jones of violation of rights protected by the First and Fifth Amendments pursuant to 42 U.S.C. § 1983.[3]

**II.     Standard of Review**

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007). The Supreme Court has established a "two-pronged approach" that a trial court should utilize when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a trial court generally must consider a plaintiff's factual allegations as true, the court should first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, the basic pleading standards "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

---

[3]     Plaintiff's complaint was filed on his behalf by his counsel. On March 12, 2015, the Court granted Plaintiff's counsel's unopposed motion to withdraw as attorney for Plaintiff. *See* Dkt. No. 7 (Mar.12, 2015).

5

Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," it "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The Court defined "plausible" as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.; see also Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting passage with approval). In other words, a plaintiff's factual allegations must allow a court to draw a reasonable inference that the defendant is liable for the misconduct alleged, if the factual allegations are proven true. *See Matrixx Industries, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011).

**III.    Argument**

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit,'" *id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748 (2001)), whereas issue preclusion (or collateral estoppel) bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* at 892 & n.5 (internal citations and quotation marks omitted).

The elements for issue preclusion are: (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case;" (2) "the

issue must have been actually and necessarily determine by a court of competent jurisdiction in that prior case;" and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). As our Circuit has explained, "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first place." *Yamaha*, 961 F.2d at 254 (emphasis in original).

Plaintiff is precluded from re-litigating in this case the issue of alleged sexual assaults that were the subject of the October 29, 2014 hearing before Judge Eilperin that addressed the cross-motions for TRO filed by Plaintiff and Mr. Jones. Defendants have attached hereto as Exhibit A the official transcript of that hearing, which demonstrates that the focus of Plaintiff's claim against Mr. Jones was the same issue that Plaintiff seeks to litigate against Mr. Jones in the instant case: the alleged sexual assaults.[4] Specifically, Plaintiff testified to Judge Eilperin that Mr. Jones "does something to [him]" on both September 22 and 23, which he reported to the sex unit. Ex. A at 3.[5] Judge Eilperin asked Mr. Jones to testify to his version of the events, and Mr. Jones vigorously denied that he ever inappropriately touched or sexually assaulted Plaintiff in any way. *Id.* at 5-14. The Court then asked Plaintiff if he had "anything else [he] want[ed] to

---

[4]   Courts in this jurisdiction routinely take judicial notice of transcripts and orders in other judicial proceedings. *See Banks v. York*, 515 F. Supp. 2d 89, 109 (D.D.C. 2007) ("This Court may take judicial notice of the Superior Court Order without converting the instant motions into motions for summary judgment."); *Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 n.5 (D.D.C. 2003) (taking judicial notice of portions of criminal indictment and criminal trial transcript). The transcripts may also be considered by the Court as public records in a motion to dismiss. *See Alexander v. Washington Gas Light Co.*, 481 F. Supp. 2d 16, 27 (D.D.C. 2006).

[5]   Plaintiff also testified that on September 30 Mr. Jones tried to talk to him while Plaintiff was at a Safeway grocery store. Ex. A at 3-4.

7

tell" the Court, and Plaintiff responded that he had letters, police reports, and medical reports from GW, and explained the only reason he had gone to Mr. Jones's house was to have him served with a stay away order. *Id.* at 14.

After listening to both sides, the Court then stated:

> Mr. Parker, this really comes down to a question of credibility, and I believe what Mr. Jones has been telling, and essentially, you know, he's, he's been with this organization that's been trying to help you, and he's been trying to help you, and this is what you're giving him for having tried to help you.
>
> And it's not something that can continue, and you can't defame people. You can't act like this. I'm going to issue a stay away order where you've got to stay away from him, his work place, his person, his home and not be in touch with him at all, and I suggest that, you know, with your staying away from him, then he's obviously not going to be contacting you.

*Id.* at 14-15.  The Court then issued a consent order, where Plaintiff was ordered to stay away from Mr. Jones. *Id.* at 15. The Court explained that "[b]asically this order provides that Mr. Parker will not assault, threaten, harass or physically abuse you. He will stay at least 100 feet away from Mr. Jones's person, home and workplace, and he won't be in touch with you by telephone, in writing, or in any other matter, and this will last for a year." *Id.* at 17. The Court further advised that if Plaintiff "willfully violated the [] order he can go to jail." *Id.* at 19. Plaintiff then assured the Court that he "won't bother" Mr. Jones. *Id.*  Review of the docket in *Afnan Parker v. Charles Jones*, C.A. No. 14-6376 reveals that Plaintiff's motion for a "temporary restraining order is denied and the case is dismissed in its entirety." Ex. B Dkt. (Oct. 29, 2014).

Here, all estoppel elements are satisfied.  First, the alleged sexual assaults raised in the complaint before this Court were also raised in the complaint and TRO hearing before Judge

Eilperin.[6] The same parties contested the sexual assault in Superior Court – Plaintiff claimed the sexual assaults occurred, Mr. Jones claimed they did not. *See generally* Ex. A. The parties submitted the issue to Judge Eilperin for a judicial determination on the cross-motions for TRO. In dismissing Plaintiff's request for a TRO and the underlying civil suit (and granting Mr. Jones's request for a TRO) the Court necessarily decided the issue of whether the sexual assaults occurred: the Court found that they did not occur, and that Plaintiff's testimony was fabricated. Ex. A at 14-15. Finally, preclusion in this case will not result in a basic unfairness to Plaintiff insofar as the resulting order—signed by Plaintiff—was a consent order where Plaintiff agreed to not assault, threaten, harass or physical abuse Mr. Jones, to stay at least 100 feet away from Mr. Jones's person and home, and to not contact Mr. Jones by telephone, writing or any other manner for a year.

Because all elements of issue preclusion are satisfied, Plaintiff should not be permitted to re-litigate the same issue raised in the Superior Court TRO proceedings in this Court. Because all of Plaintiff's claims in the instant matter arise from the same issue previously litigated—the alleged sexual assaults—this Court should dismiss the complaint in its entirety with prejudice.

        Respectfully submitted,

        KARL A. RACINE
        Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General, Civil Litigation

        /s/ *Jonathan H. Pittman*
        JONATHAN H. PITTMAN (DC. Bar No. 430388)
        Chief, Civil Litigation Section III

---

[6] While Plaintiff's complaint only alleged that Mr. Jones sexually assaulted him on September 23, 2014, during the actual TRO hearing Plaintiff alleged that sexual assaults occurred on both September 22 and 23, 2014. *See* Ex. A at 3.

9

/s/ *Shana L. Frost*
SHANA L. FROST (DC. Bar No 458021)
Assistant Attorney General
441 Fourth Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 724-6534
shana.frost@dc.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFNAN PARKER,<br><br>    Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.,*<br><br>    Defendants. | No. 14-cv-2127 (GK) |

ORDER

Upon consideration of Defendants' Motion to Dismiss, as well as any memoranda of opposition or reply filed thereto, it is, this _____ day of _____, 2015, hereby

ORDERED that the motion is granted; and it is

FURTHER ORDERED that this matter be, and hereby is, dismissed with prejudice.

                    _____
                    Hon. Gladys Kessler
                    United States District Judge

Copies served upon:

Shana L. Frost (via EFC)

Afnan Parker
1226 Oates Street, NE
Washington, DC 20002