# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| AFNAN PARKER, | : | | |
| | : | | |
| Plaintiff. | : | Civil Action No.: | 14-2127 (RC) |
| | : | | |
| v. | : | Re Document No.: | 65 |
| | : | | |
| DISTRICT OF COLUMBIA, *et al.* | : | | |
| | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Afnan Parker, proceeding *pro se*,[1] alleges that during his participation in Project Empowerment—a program managed by the District of Columbia's Department of Employment Services—the program's Director sexually harassed and assaulted him then intentionally prevented him from receiving benefits for participating in the program. Mr. Parker raises a host of claims against the District of Columbia and the Director, including several asserted under 42 U.S.C. § 1983 for purported violations of his constitutional rights. Defendants move for summary judgment on three claims, which allege violation of Mr. Parker's rights to procedural and substantive due process with respect to the termination of Mr. Parker's benefits and violation of Mr. Parker's right to bodily integrity with respect to the purported sexual assault. For the

---

[1] Though Mr. Parker is now proceeding *pro se*, at various points in this litigation, he has been represented by counsel and the operative complaint in this matter was drafted with the aid of counsel.

reasons explained below, the Court grants summary judgment in Defendants' favor with respect to Mr. Parker's substantive due process claim and on the sole issue of notice with respect to Mr. Parker's procedural due process claim. However, the Court otherwise denies Defendants' motion.

## II. FACTUAL BACKGROUND

In May 2014, Plaintiff Afnan Parker enrolled in Project Empowerment, a workforce readiness and employment program operated by the District of Columbia's Department of Employment Services ("DOES").[2] Am. Compl. ("Compl.") ¶ 2, 7; Defs.' Mem. of Points & Authorities ("Defs.' MSJ") at 1, ECF No. 65-1. At the time of Mr. Parker's participation, Charles Samuel Jones Jr. served as the Director of Project Empowerment. Compl. ¶ 3; Defs.' MSJ at 1. Project Empowerment participants received $9.50 per hour from DOES, while either working at a transitional job placement or attending one of Project Empowerment's classes. Defs.' MSJ at 2. The parties apparently agree that Mr. Parker's enrollment in the program was set to end on or around September 26, 2014. Defs.' Statement of Undisputed Material Facts ("Defs.' SUMF") ¶ 2, ECF No. 65-2; *see* Parker Deposition ("Parker Dep.") 40:14–41:5. They likewise agree that DOES terminated Mr. Parker on or around September 23, 2014 and that he was not paid any benefits for the remaining program days. Defs.' SUMF ¶¶ 1, 9; Parker Dep. 40:21–41:5; Compl. ¶ 50. The parties disagree, however, about the circumstances surrounding Mr. Parker's termination from the program.

---

[2] According to the DOES website, Project Empowerment is "designed to provide nearly 700 unemployed District residents with opportunities to grow in education, training, and subsidized employment placements each year." *Project Empowerment Program*, Dep't of Emp't Servs., https://does.dc.gov/service/project-empowerment-program.

According to Defendants, DOES terminated Mr. Parker because "he was accused of spitting, or attempting to spit, on two female participants." Defs.' SUMF ¶ 1. Defendants contend that Mr. Parker met with DOES employees—including a psychiatrist—to discuss the accusation and that during the meeting he denied that he had spit on or attempted to spit on the women. Defs.' SUMF ¶¶ 4–5, 11. Defendants assert that Mr. Parker was given notice of the grounds for his termination—specifically, "Mr. Parker was told that he was being terminated because his behavior, which led to the spitting accusation, was perceived as inappropriate"—and that he also received an opportunity to be heard. Defs.' SUMF ¶¶ 4–7, 10–11.

While Mr. Parker does not contest that Defendants told him that he was fired because of the spitting accusation, *see* Parker Dep. 40:7-13, he disputes that he ever spat on or at any other program participant and offers a different take on the days leading up to his termination. According to Mr. Parker, in August and September 2014, he complained to Mr. Jones and other Project Empowerment employees that he was receiving insufficient support in finding a permanent job placement. Compl. ¶¶ 8–12. Mr. Parker alleges that on September 22, 2014, Mr. Jones called Mr. Parker into his office then closed the door. Compl. ¶ 13. After warning Mr. Parker that anything said in the office was to be kept confidential, Mr. Jones purportedly offered to use his work connections to secure Mr. Parker a permanent job placement in exchange for sexual favors. Compl. ¶¶ 14–19. Mr. Parker claims that he rebuffed Mr. Jones and returned to class. Compl. ¶¶ 20–21.

Mr. Parker asserts that when he returned to the program the next day, he encountered Mr. Jones in a restroom. *See* Compl. ¶¶ 22–25. Mr. Jones allegedly approached Mr. Parker from behind while Mr. Parker was urinating and "grabbed and squeezed [Mr. Parker's] scrotum," causing severe pain. Compl. ¶¶ 25–26. Mr. Parker pushed Mr. Jones away, after which Mr.

Jones allegedly propositioned Mr. Parker once again, asking "When you going to give me some?" Compl. ¶¶ 27–29. Mr. Parker contends that he rushed into the hallway, but Mr. Jones followed him and continued to proposition him and to sexually and physically assault him. Compl. ¶¶ 30–34. After pushing Mr. Jones away, Mr. Parker gathered his belongings and left the building, reporting the incident to security on his way out. Compl.¶¶ 35–38. The next day, Mr. Parker reported his claims to the police and, in the days following, he complained or attempted to complain to various DOES officials. Compl. ¶¶ 40–43. Mr. Parker contends that DOES failed to pay him the reminder of his benefits for participating in Project Empowerment. Compl. ¶ 50. According to Mr. Parker, in the days after the purported assault, he experienced significant pain, depression, headaches, and difficulty sleeping, for which he has received medical and mental health treatment. Compl. ¶¶ 44–49.

Mr. Parker initiated the present action in December 2014. *See* 1ˢᵗ Complaint, ECF No. 1. After this Court denied Defendants' motion to dismiss,[3] the case proceeded to discovery, which concluded in February 2017. *See* Joint Status Report, ECF No. 54. Defendants filed their motion for partial summary judgment on June 2, 2017. Defs.' MSJ, ECF No. 65. Four days later, this Court advised Mr. Parker of his obligations under the Federal Rules of Civil Procedure and the local rules of this court, including his obligation to timely respond to Defendants'

---

[3] Defendants moved for dismissal on the sole ground that Mr. Parker was collaterally estopped from re-litigating the issue of alleged sexual assault because a judge of the District of Columbia Superior Court had purportedly ruled on the issue by dismissing Mr. Parker's request for a temporary restraining order and granting Mr. Jones's request for the same. *Parker v. District of Columbia*, 2015 WL 7760162, *1 (D.D.C. Dec. 1, 2015). This Court denied the motion, explaining that it could not determine what issues had been litigated given the sparse record of proceedings before the Superior Court—which, among other things, contained no evidence of what the judgment entailed. *Id.* The Court also observed that entry of a temporary restraining order does not constitute a final merits ruling, and, thus, cannot give rise to collateral estoppel. *Id.*

motion.  *Fox/Neal* Order, ECF No. 66.  Mr. Parker subsequently requested and was granted an

extension to respond to Defendants' motion.  *See* Mot. for Extension of Time, ECF No. 67;

Minute Order (July 25, 2017).  More than two months after the new deadline passed, however,

Mr. Parker still had not filed a response.  *See* Order (Nov. 22, 2017), ECF No. 72.  Nonetheless,

the Court afforded Mr. Parker additional time to respond, extending the already-elapsed

deadline, but admonishing that the Court would grant Mr. Parker no further extension absent a

showing of extraordinary circumstances.  *Id.*  That third deadline passed more than a month ago,

and Mr. Parker has still filed no response—timely or untimely.  Accordingly, the Court now

takes up Defendants' motion for summary judgment without any formal response from Plaintiff.

### III.  LEGAL STANDARD

The principal purpose of summary judgment is to streamline litigation by disposing of

factually unsupported claims or defenses and determining whether there is a genuine need for

trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  A court may grant summary

judgment when "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact

is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a

reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380

(2007).  While a defendant moving for summary judgment need not negate the plaintiff's case,

"'[i]t is not enough to move for summary judgment without supporting the motion in any way or

with a conclusory assertion that the plaintiff has no evidence to prove his case.'"  *Grimes v.

District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015) (quoting *Celotex Corp.*, 477 U.S. at 328);

*see also Anderson*, 477 U.S. at 251–52 (explaining that the inquiry under Rule 56 is essentially

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  Rather, the movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the nonmovant, *see Anderson*, 477 U.S. at 255.

Typically, to defeat a motion for summary judgment, the nonmoving party points to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  Where, as here, the nonmoving party has failed to respond to the motion for summary judgment, a court cannot grant the motion as conceded.  *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016).  Because the "burden is always on the movant to demonstrate why summary judgment is warranted," *id.* (quoting *Grimes v. District of Columbia*, 794 F.3d 83 (Griffith, J., concurring)), a district court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  *Id.* at 509.

## IV.  ANALYSIS

To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show that, while acting under color of state law, the defendant deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  Defendants move for summary judgment on Mr. Parker's Fourth Amendment claim in Count V, arguing that Mr. Parker has not stated a claim under the Fourth Amendment and that any alleged assault

committed by Mr. Jones was not an action taken under color of state law.  Defendants also move for summary judgment on Plaintiff's procedural and substantive due process claims in Count VI. With respect to the procedural due process claim, Defendants contend that Mr. Parker was not constitutionally entitled to benefits for his participation in Project Empowerment and that, in any event, DOES afforded him sufficient process before terminating his benefits.  With respect to the substantive due process claim, Defendants assert that Mr. Parker has not shown that Defendants acted with deliberate indifference to his right to benefits and, thus, they argue that his claim must fail.

As explained below, the Court agrees that Defendants are entitled to summary judgment on Mr. Parker's substantive due process claim for benefits and that, with respect to Mr. Parker's procedural due process claim, Defendants have shown that they are entitled to summary judgment on the sole issue of notice.  However, Defendants have otherwise failed to demonstrate an absence of genuine issues of material fact.  Accordingly, Defendants' motion for summary judgment is denied with respect to Count V—which the Court construes as a claim of violation of Mr. Parker's substantive due process right to bodily integrity rather than as a claim under the Fourth Amendment—and with respect Mr. Parker's claimed procedural due process violation for the purported deprivation of benefits owed to Mr. Parker for participating in Project Empowerment.

**A. Defendants' Motion for Summary Judgment is Denied with Respect to Count V**

Mr. Parker asserts that Defendants violated his right to "bodily integrity under the Fourth Amendment by subjecting him to unwanted physical and sexual abuse."  Compl. ¶ 72. Defendants first argue that Mr. Parker has not stated a claim under the Fourth Amendment.  *See* Charles Jones, Jr.'s Mot. for Partial Summ. J. at 2 n.2, ECF No. 65.  Defendants next move for

summary judgment, arguing that they cannot be held liable under 42 U.S.C. § 1983 for any violation of Mr. Parker's right to bodily integrity because Mr. Jones's alleged actions were not taken under color of state law.  Defs.' MSJ at 8.  The Court concludes that, though Mr. Parker's claim is improper under the Fourth Amendment, construed as a claim of violation of Mr. Parker's substantive due process right to bodily integrity, Count V states a claim.  The Court also finds that Defendants have failed to demonstrate an absence of issues of material fact regarding this claim.  Accordingly, Defendants' motion for summary judgment is denied with respect to this claim.

### 1.  Mr. Parker's Claim is Not Properly Asserted Under the Fourth Amendment, But It Survives as a Substantive Due Process Claim

Mr. Parker alleges that Defendants violated his rights to "bodily integrity under the Fourth Amendment."  Compl. ¶ 72.  Defendants argue that Mr. Parker "has not alleged an unreasonable search or seizure for a Fourth Amendment claim, nor does the evidence support one."  Charles Jones, Jr.'s Mot. for Partial Summ. J. at 2 n.2.  While the Court agrees that Mr. Parker's claim does not squarely fall under the Fourth Amendment, it does not conclude that Defendants are entitled to summary judgment on this basis.  Rather, the Court finds that Mr. Parker's claim is properly construed as— and survives as—a claim of violation of Mr. Parker's substantive due process right to bodily integrity.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV.  "The threshold inquiry in any Fourth Amendment analysis is whether the government's conduct is included in the Amendment's coverage, in other words, whether it amounts to a 'search' [or seizure] for constitutional purposes."  *United States v. Gonzalez*, 328 F.3d 543, 546 (9th Cir. 2003).  A search of a person occurs when the government physically intrudes on a subject's body

for the purpose of obtaining information. *See Grady v. North Carolina*, 135 S. Ct. 1368, 1371 (2015). And "[a] seizure of a person occurs when a reasonable person would have perceived that he was not free to go under the circumstances." *Frost v. Catholic Univ. of Am.*, 960 F. Supp. 2d 226, 233 (D.D.C. 2013). Here, as Defendants note, it is not apparent why Mr. Jones's alleged conduct might constitute either a search or a seizure. *See* Charles Jones, Jr.'s Mot. for Partial Summ. J. at 2 n.2.

However, the Court need not strictly construe Count V as asserting a complaint under the Fourth Amendment. *See Pate v. United States*, 328 F. Supp. 2d 62, 67 (D.D.C. 2004) ("Generally, a court should liberally construe a complaint so as to cause the facts and allegations in the complaint to be construed in the light most favorable to the plaintiff."); *see also, e.g.*, *Pryor-El v. Kelly*, 892 F. Supp. 261, 273 (D.D.C. 1995) ("[C]onsistent with the liberal treatment afforded *pro se* litigants, the Court will construe Plaintiff's Complaint as lodging the only potentially applicable constitutional argument."). Mr. Parker's claim that Defendants violated his right to bodily integrity appears to state a substantive due process claim, and the Court will construe it as such rather than dismissing his claim outright. *See, e.g.*, *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 795 (8th Cir. 1998) ("A number of circuit courts have found due process violations when state actors have inflicted sexual abuse on individuals."); *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) ("If the 'right to bodily integrity' means anything, it certainly encompasses the right not to be sexually assaulted under color of law.").

## 2. Genuine Issues of Material Fact Remain Regarding Whether Defendant Jones Acted Under Color of State Law When He Allegedly Assaulted Mr. Parker

According to Defendants, any sexual assault committed by Mr. Jones must be regarded as a private act because his official duties do not involve touching of any kind and because the alleged assault purportedly took place in a public restroom, which Mr. Jones could access

irrespective of his government position. Defs.' MSJ at 8. The Court concludes that genuine issues of material fact on the question of whether Mr. Jones acted under color of law preclude entry of summary judgment for Defendants.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Plainly, a state employee performing an official duty pursuant to state authority acts under the color of state law. *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 68 (D.D.C. 2007). But even if a state employee "merely purport[s] to exercise [state] authority, he may be held liable for constitutional deprivation pursuant to Section 1983." *Id.* As the Supreme Court explained decades ago in *Screws v. United States*, 325 U.S. 91 (1945), the language "under color of law" embraces "[a]cts of officers who undertake to perform their officials duties . . . whether they hew to the line of their authority or overstep it." *Id.* at 111. By contrast, when a government officer acts "solely 'in the ambit of their personal pursuits' [he is] not acting under color of state law." *G'Sell v. Carven*, 724 F. Supp. 2d 101, 111 (D.D.C. 2010).

No bright line test distinguishes "personal pursuits" from actions taken under color of law. *Id.* The inquiry—which is objective—turns on "the nature and circumstance of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Id.* (quoting *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)). "The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id.* (quoting *Martinez*, 54 F.3d at 986). Thus, in *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476 (9th Cir. 1991), the Ninth Circuit affirmed a

jury verdict against a Washington state employee who was accused of raping refugees from Laos during the course of his employment. *See id.* at 483. In doing so, the Ninth Circuit disagreed with appellant's assertion that there was insufficient evidence from which a jury could conclude that he had acted under color of state law. *Id.* at 478–79. The Ninth Circuit explained that appellant was responsible for interviewing and finding suitable employment for refugees and that there was evidence from which "the jury reasonably could have concluded that defendant used his government position to exert influence and physical control over these plaintiffs in order to sexually assault them." *Id.* at 480.

Defendants contend that Mr. Jones could not have acted under color of state law when he allegedly assaulted Mr. Parker. They explain that District of Columbia law certainly does not authorize sexual assault and that Mr. Jones's duties involved no touching and, therefore, he could not have acted under the guise of his authority as a state actor. Defs.' MSJ at 8. Defendants' argument, however, depends heavily on the proposition that the Supreme Court rejected in *Screws*. They are not absolved of liability just because District of Columbia law does not authorize sexual assault or because Mr. Jones might have overstepped his authority through his alleged actions. *Cf. Dang Vang*, 944 F.2d at 478–80 (finding that there was sufficient evidence on which a jury could conclude that a defendant accused of rape in a § 1983 action acted under color of state law). Rather, the central question is whether there remain issues of material fact regarding whether Mr. Jones acted under pretense of state authority when he allegedly assaulted Mr. Parker.

The Court concludes that issues of material fact remain. As the Court explained above, it must look to whether Mr. Jones "purpose[d] to act in an official capacity or to exercise official responsibilities pursuant to state law" at the time of the alleged assault. *G'Sell*, 724 F. Supp. 2d

at 111.  According to Mr. Parker's version of events, on September 22, 2014, Mr. Jones offered

to use his work connections to secure Mr. Parker a permanent job placement in exchange for

sexual favors.  The very next day, Mr. Jones allegedly propositioned Mr. Parker again and

sexually assaulted him, this time in a bathroom and in a hallway in the building in which Mr.

Parker was attending classes for Project Empowerment and in which Mr. Jones was performing

his work as Director of the program.  Defendants apparently view—and ostensibly ask this Court

to view—these events as separate, wholly disregarding the circumstances that led up to the

bathroom confrontation, over which there are plainly disputes of fact.  The Court does not see,

however, how it could possibly find as a matter of law that Mr. Jones could not have acted under

color of state law.

Reasonable jurors could credit Mr. Parker's account.  Those same jurors could reason

that any sexual assault Mr. Jones committed the day after he explicitly invoked his authority in

an attempt to procure sexual favors constituted continued invocation of that same authority.  At

bottom, the issue of whether Mr. Jones acted under color of state law therefore may come down

to a determination of credibility, which this Court is neither authorized nor equipped to decide on

a motion for summary judgment.  *Cf. Brokenborough v. District of Columbia*, 236 F. Supp. 3d

41, 55–56 (D.D.C. 2017) (denying summary judgment because divergent testimony about

whether a state actor-supervisor made sexual comments to an employee at work and summoned

the employee to his office where he harassed her, created issues of material fact regarding

whether the supervisor had acted under color of state law); *Jones v. District of Columbia*, 646 F.

Supp. 2d 42, 48 (D.D.C. 2009) ("There is most certainly a genuine fact issue as to whether

defendant . . . purported to use his supervisory state authority over plaintiff to lure her to his

office and harass her.").  Defendants' contention that the bathroom in which the alleged assault

occurred was open to the public and not just to DOES employees and Project Empowerment

participants—a bald assertion for which there is no support in the record—is insufficient to show

as a matter of law that Mr. Jones did not act under color of state law.  While this assertion might

support Defendants' view that, if Mr. Jones acted, he did so under the ambit of his personal

pursuits, it is surely not dispositive.  Accordingly, the Court denies Defendants' motion for

summary judgment with respect to this claim.

### B. Genuine Issues of Material Fact Preclude Summary Judgment on Mr. Parker's Procedural Due Process Claim Asserted in Count VI

The Due Process Clause of the Fifth Amendment prohibits the District of Columbia from

depriving any person of liberty or property without "due process of law."[4]  *Atherton v. D.C.*

*Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009).  "The first inquiry in every due process

challenge is whether the plaintiff has been deprived of a protected interest in 'property' or

'liberty.'"  *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014)

(quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)).  If the plaintiff has been

deprived of a protected interest, the court then considers "whether the procedures used by the

Government in effecting the deprivation 'comport with due process.'"  *Id.* (quoting *Am. Mfrs.*

*Mut. Ins. Co.*, 526 U.S. at 59).  "Due process ordinarily requires that procedures provide notice

of the proposed official action and 'the opportunity to be heard at a meaningful time and in a

meaningful manner.'"  *Id.* at 318 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

---

[4] Mr. Parker's complaint asserts violation of his right to procedural due process under the Fourteenth Amendment.  Compl. ¶¶ 75–83.  However, "[b]ecause D.C. is a political entity created by the federal government, it is subject to the restrictions of the Fifth Amendment, not the Fourteenth."  *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).  In any event, "[t]he procedural due process components of the two Amendments are the same."  *Id.*

Mr. Parker asserts that he "had a right to all the benefits entitled to any participant of the Project Empowerment program, including full payment for time participating in Project Empowerment classes." Compl. ¶¶ 76–77. Mr. Parker contends that Defendants deprived him of procedural due process by intentionally preventing him from receiving those benefits. Compl. ¶¶ 78–80. Defendants move for summary judgment, arguing that Mr. Parker had no constitutionally protected interest in the benefits he received from Project Empowerment. Defs.' MSJ at 9. Defendants also stress that, even assuming that Mr. Parker had a constitutionally protected interest in program benefits, he received all the process to which he was due when he was terminated from the program. Defs.' MSJ at 9. On the record before the Court, it cannot determine as a matter of law that Mr. Parker did not enjoy a constitutionally protected property interest in benefits owed for participating in Project Empowerment. And, while the Court is satisfied that Defendants provided constitutionally sufficient notice, it cannot determine on this record whether Mr. Parker received a constitutionally adequate opportunity to be heard before he was deprived of benefits. Accordingly, Defendants' motion for summary judgment is granted with regard to the sole issue of notice, but it is otherwise denied.

1. **The Court Cannot Conclude As a Matter of Law That Mr. Parker Did Not Enjoy a Constitutionally Protected Property Interest in Project Empowerment Benefits**

Defendants explain that, had Mr. Jones been permitted to complete Project Empowerment, he would have earned approximately an additional $171—payment for about three program days. Defs.' MSJ at 9. They contend, however, that Mr. Parker had no constitutionally protected interest in that payment, asserting that "the discretionary nature of the program is insufficient to invoke due process rights." Defs.' MSJ at 10. On the record before the Court, it cannot determine as a matter of law whether program participants have a constitutionally protected property interest in Project Empowerment benefits.

"The Supreme Court has long held that the constitutional guarantee of due process extends to protect property interests, broadly defined as the 'interests that a person has already acquired in specific benefits.'" *Doe v. Gates*, 981 F.2d 1316, 1320 (D.C. Cir. 1993) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972)). And it is well established that some, but not all, government benefits give rise to property interests protected by the Due Process Clause. *NB ex. rel Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Roth*, 408 U.S. at 577); *see also Ralls Corp.*, 758 F.3d at 316 ("In the usual case, the fact that the property interest is recognized under state law is enough to trigger the protections of the Due Process Clause."). "To have a protected property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. State law creates a constitutionally protected entitlement when the statute or implementing regulations place substantive limitation on official discretion to revoke or curtail benefits. *Doe*, 981 F.2d at 1320; *see also Lyons v. Barrett*, 851 F.2d 406, 410 (D.C. Cir. 1988) (discretionary appointment to a government position did not confer a property interest sufficient to invoke due process rights).

Neither Mr. Parker nor Defendants point to a specific provision of District of Columbia law that might create a property interest in benefits for participating in Project Empowerment. Likewise, neither points to authority that might support Defendants' contention that such benefits are given discretionarily. The Court cannot, though, of course, take this silence to mean that no such provisions exist—especially, for the purpose of assessing a motion for summary judgment.

D.C. Code § 32-1331 provides that "[t]he Mayor shall establish and implement a program . . . to provide transitional employment for District of Columbia residents residing in persistent problem areas who face barriers to employment due to deficiencies in education, work experience, work training, work skills, prior incarceration, or the loss of certain occupations or industries from the economy of the District of the Washington Metropolitan Area." D.C. Code § 32-1331(a). Though the record does not establish whether Project Empowerment was created under this provision, based on the parties' descriptions of the program, it seems to fit the bill.

Under D.C. Code § 32-1331(d), "[a]ll jobs into which participants are placed *shall* pay stipends, training wages, or wages as the Mayor may determine are appropriate for the job and participant and shall last for a maximum of 12 months." Notably, this language is mandatory, not discretionary. The record offers little in the way of clarification, however, about whether Mr. Parker was or would have been working at a job placement site during his remaining days at Project Empowerment. It likewise offers no explanation of whether participation in DOES-led training of the sort that Mr. Parker was apparently engaged on the day of the alleged sexual assault constitutes a training event for which program participants must be compensated under this provision. The Court simply cannot say one way or the other whether Project Empowerment benefits are or are not a protected property interest.[5]

---

[5] Defendants seem to suggest that Mr. Parker had no property interest in payment for the remaining program days because of the relatively small amount that he was due at the time of his termination. *See* Defs.' MSJ at 9–10. "The size of the interest at stake does not determine whether due process attaches to adjudications concerning the interest, the question is rather the type of interest involved and whether it can properly be classified as a liberty or property interest." *Grays Panthers v. Schweiker*, 652 F.2d 146, 156 n.19 (D.C. Cir. 1980). While "truly de minimis procedural rights can be dispensed with altogether," "[w]hen monetary interests are at stake, the doctrine has been limited to matters involving a few dollars or less." *Id.* Thus, to the extent that Defendants argue that they are entitled to summary judgment because Mr. Parker raises only a de minimis interest, their argument fails.

It is the movant's burden to establish that summary judgment is appropriate. Because of deficiencies in the record, the Court cannot conclude as a matter of law that Defendants are entitled to summary judgment on the question of whether Mr. Parker had a constitutionally protected interest in Project Empowerment benefits. Accordingly, Defendants' motion is denied with respect to this issue.

### 2. Genuine Issues of Material Fact Remain As to Whether Mr. Parker Was Afforded Constitutionally Sufficient Process Before His Benefits Were Terminated

The Court next considers Defendants' argument that they are entitled to summary judgment on Mr. Parker's procedural due process claim because, even if Mr. Parker had a protected interest in benefits for participating in Project Empowerment, he was afforded constitutionally sufficient process before his benefits were terminated. Defs.' MSJ at 9–10. "[T]he Supreme Court has established a 'general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property.'" *UDC Chairs Chapter, Am. Ass'n of Univ. Professors. v. Bd. of Trustees of UDC*, 56 F.3d 1469 (D.C. Cir. 1995) (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993)). "Beyond the basic requirements of notice and an opportunity to be heard, the precise requirements of due process are flexible." *English v. District of Columbia*, 717 F.3d 968, 972 (D.C. Cir. 2013). While the Court concludes that Mr. Parker was afforded sufficient notice, issues of material fact remain regarding whether Mr. Parker was given a constitutionally adequate opportunity to be heard. Accordingly, the Court grants Defendants' motion with respect to the sole issue of notice, but otherwise denies it.

### i. Defendants Are Entitled to Summary Judgment on the Issue of Whether Mr. Parker Received Constitutionally Sufficient Notice Before His Benefits Were Terminated

Defendants assert that "Mr. Parker was given notice of the grounds for his termination from the program when he was told that he had been accused of spitting on two women." Defs.' SUMF ¶ 10. They append to their motion for summary judgment portions of the transcript of a deposition in which Mr. Parker acknowledges that he spoke with a psychiatrist and two other DOES staff members regarding the accusation before he received word of his termination from the program. Parker Dep. 39:14-40:3, 41:6-18. It is clear from his testimony that he was familiar with the alleged incident, the factual basis for it, and (seemingly) the identity of the women who complained. *See* Parker Dep. 40:7-41:18.

Notice under the Due Process Clause must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of" an action that might terminate the parties' liberty or property interests. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice must also provide interested parties with some sense of the factual basis for the action. *See Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 599 (D.C. Cir. 1993); *see also, e.g.*, *Gray Panthers v. Schweiker*, 652 F.2d 146, 148 (D.C. Cir. 1980) (holding that a federal agency failed to provide constitutionally sufficient notice to Medicare recipients when it had not given them written notice of the reasons for denying benefits). The Court concludes that there is no genuine issue of material fact regarding whether Mr. Parker received notice. Indeed, his own testimony establishes that fact. The Court also finds that the notice Mr. Parker received was adequate as a matter of law. Accordingly, summary judgment is entered for Defendants on the issue of notice.

**ii. The Court Cannot Conclude As a Matter of Law That Mr. Parker Was Afforded A Constitutionally Sufficient Opportunity to Be Heard Before His Benefits Were Terminated**

The Court next considers Defendants' contention that they are entitled to summary judgment on Mr. Parker's procedural due process claim because he was given constitutionally sufficient process. The sparse record before the Court precludes it from granting Defendants' motion.

In addition to notice, a "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "In practice, the determination of what counts as an opportunity to be heard, or what counts as a meaningful time and a meaningful manner, calls on courts to apply a 'flexible' test attuned to what 'the particular situation demands.'" *Berryman-Turner v. District of Columbia*, 233 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Mathews*, 424 U.S. at 334). Usually, courts consider "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures use, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.'" *Id.* (quoting *Mathews*, 424 U.S. at 335).

With respect to the motion at issue, the Court need not belabor its analysis. Indeed, given the sparse information about the process that the District of Columbia afforded Mr. Parker, the Court could hardly belabor the analysis even if it was so inclined. It suffices, in this instance, to look to Defendants' own words about the process. According to Defendants, "Afnan Parker was terminated from participating in . . . Project Empowerment because he was accused of spitting, or attempting to spit, on two female participants." Defs.' SUMF ¶ 1. Taking Defendants at their

word, it is hardly clear why an accusation might constitutionally suffice to justify Mr. Parker's termination.  It is likewise difficult for the Court to declare Mr. Parker's conversations with DOES employees a meaningful opportunity to be heard if the accusation itself resulted in his termination.  While additional evidence might reveal that the process Mr. Parker was afforded is constitutionally adequate, on this record, the Court cannot make that determination. Accordingly, Defendants' motion is denied on this issue.

***

To show entitlement to summary judgment on Plaintiff's procedural due process claim, Defendants needed to demonstrate either (1) that, as a matter of law, Mr. Parker was not deprived of a constitutionally protected interest or (2) that no issues of material fact remain regarding the process Mr. Parker was afforded and that he was afforded process that can be called constitutionally sufficient as a matter of law.  Defendants have failed on both counts.  On the record before the Court, it cannot say whether Mr. Parker had a constitutionally protected interest in benefits from his participation in Project Empowerment.  And, while Defendants have shown that Mr. Parker was afforded constitutionally sufficient notice, they have not demonstrated whether he was afforded a meaningful opportunity to be heard.  Accordingly, Defendants' motion for summary judgment on Mr. Parker's procedural due process claim is denied, except on the issue of notice.

## C.  Defendants are Entitled to Summary Judgment on Mr. Parker's Claim That His Right to Substantive Due Process Was Violated (Count VI)

Finally, Defendants move for summary judgment on Mr. Parker's substantive due process claim, which alleges that Mr. Jones "violated [Mr. Parker's] substantive right of due

process . . . for all of entitled benefits."[6]  Compl. ¶ 81.  The parties agree that, after Mr. Parker

was terminated from Project Empowerment, he was denied benefits that he would have received

for participating in the program.  *See* Compl. ¶ 78; Defs.' MSJ at 9–10.  Accordingly, the only

issue for the Court is whether it can conclude, as a matter of law, that Mr. Parker had no

substantive due process right to these benefits.  Finding that Mr. Parker had no such right, the

Court grants summary judgment to Defendants.

The substantive component of the Due Process Clause bars "certain government actions

regardless of the fairness of the procedures used to implement them," *Cty. of Sacramento v.*

*Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327 (1986)), on the

theory that some interests are "deeply rooted in this Nation's history and tradition and implicit in

the concept of ordered liberty," *Aka v. United States Tax Court*, 854 F.3d 30, 34 (D.C. Cir.

2017) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).  The heightened

protections of the Due Process Clause are triggered only with regard to "the most egregious

official conduct" that can be said to "shock the conscience."  *Cty. of Sacramento*, 523 U.S. at

846; *see also, e.g.*, *Rochin v. California*, 342 U.S. 165, 173–73 (1952) (holding that the forced

pumping of a suspect's stomach offended due process as conduct that violates the "decencies of

civilized conduct").  As the D.C. Circuit has explained time and again, "the Supreme Court has

cautioned against expanding the substantive rights protected by the Due Process Clause 'because

guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'"

*Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695,

702 (D.C. Cir. 2007) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)).

---

[6]  As with Plaintiff's procedural due process claim, this claim is properly asserted under
the Fifth Amendment.  *See Molina-Aviles v. District of Columbia*, 824 F. Supp. 2d 4, 9 & n.8
(D.D.C. 2011).

Here, Mr. Parker claims to have a substantive due process right to Project Empowerment benefits. He cites no provision of law, however, that might have conferred such a right. He likewise fails to contend with the Supreme Court's and the D.C. Circuit's strictly circumscribed view of substantive due process. For example, courts have roundly rejected that public employees enjoy a fundamental right to government employment. *See Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 330 F.3d 513, 523 (D.C. Cir. 2003) ("Neither the Supreme Court nor this court has ever recognized an interest in public employment as fundamental. In fact, the Supreme Court has said that its decisions 'give no support to the proposition that a right of government employment *per se* is fundamental." (quoting *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976) (per curiam))). In light of these precedents, the Court concludes that Mr. Parker did not have a substantive due process right to Project Empowerment benefits. Accordingly, Defendants' motion for summary judgment is granted with respect to this claim.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment in Defendants' favor with respect to Mr. Parker's substantive due process claim and on the sole issue of notice with respect to Mr. Parker's procedural due process claim. However, the Court otherwise **DENIES** Defendants' motion. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.[7]

Dated: February 5, 2018                                        RUDOLPH CONTRERAS
                                                                      United States District Judge

---

[7] It is apparent from Defendants' cursory briefing at both the motion to dismiss and motion for summary judgment stages of this litigation that they have brushed off Plaintiff's claims as frivolous and this case as unworthy of anything more than minimal effort. This case is now headed for trial in federal court, and the Court expects that Defendants will put forward more substantial effort, in particular with respect to their preparation of any pretrial filings.